1   TOWNSEND AND TOWNSEND AND CREW LLP
    ROGER L. COOK (State Bar No. 55208)
2   ERIC P. JACOBS (State Bar No. 88413)
    IRIS SOCKEL MITRAKOS (State Bar No. 190162)
3   ROBERT A. McFARLANE (State Bar No. 172650)
    Two Embarcadero Center, Eighth Floor
4   San Francisco, California  94111
    Telephone: (415) 576-0200
5   Facsimile: (415) 576-0300

6   *Attorneys for Defendants Technology Properties, Ltd.*
    *and Daniel E. Leckrone*
7
    HENNEMAN & SAUNDERS
8   F. ERIC SAUNDERS (State Bar No. 87686)
    3081 Ponderosa Road
9   P.O.Box 2215
    Arnold, CA 95223
10  Telephone: (209) 795-6650
    Facsimile: (209) 795-6659
11
    *Attorney for Defendant Charles H. Moore*
12

13

14                UNITED STATES DISTRICT COURT

15            FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                     SAN JOSE DIVISION

17  PATRIOT SCIENTIFIC CORPORATION,        Case No.   C04 0618 JF (HRL)

18                  Plaintiff,              **DEFENDANTS CHARLES H.**
                                            **MOORE AND TECHNOLOGY**
19          v.                              **PROPERTIES LTD.'S NOTICE OF**
                                            **MOTION AND MOTION FOR**
20  CHARLES H. MOORE, TECHNOLOGY            **DISQUALIFICATION OF**
    PROPERTIES LTD., and DANIEL E.          **PLAINTIFF'S COUNSEL; POINTS**
21  LECKRONE,                               **AND AUTHORITIES IN SUPPORT**
                                            **THEREOF**
22                  Defendants.
                                            Date:  February 4, 2005
23                                          Time:  10:00 a.m.
                                            Place: Courtroom 2
24

25

26                        **REDACTED VERSION**

27  **(UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)**

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL BACKGROUND....................................................................................2

      A.      Patriot Disputes That Moore and Fish Jointly Invented And Jointly Own The Patents-In-Suit...................................................................................2

      B.      Higgins Was Moore's Attorney During Prosecution of the Patents-In-Suit..........................................................................................................................4

      C.      Patriot's New York Counsel Improperly Retained Higgins To Assist In This Litigation Against Higgins' Former Client Charles Moore......................6

III.    ARGUMENT...............................................................................................................8

      A.      California Standards of Attorney Conduct Govern Counsel's Actions In This Matter...................................................................................................8

      B.      Attorneys' Fiduciary Obligations To Former Clients Forbid Subsequent Representation Of Adverse Parties In Related Matters And The Use Of Confidential Information To Former Client's Detriment. ...................................................................................................8

      C.      Higgins Represented Both Moore and Fish During Prosecution of the Patents-In-Suit.........................................................................................12

      D.      The Relationship Between Patriot's New York Counsel And Higgins Breached Higgins' Fiduciary Duties of Confidentiality and Loyalty to Moore, Violated The Applicable Rules Of Professional Conduct, And Created Disqualifying Conflicts of Interest. ....................................................13

      E.      Patriots' New York Counsel Must Be Disqualified Because Of Its Improper Relationship With Higgins And Because It Gained Access To Moore's Attorney-Client Confidences By Virtue Of The Relationship.......................................................................................................14

      F.      Patriot's California and Georgia Counsel Should Also Be Disqualified. ........................17

      G.      The Present Dispute Between Patriot and Moore Does Not Waive Moore's Privilege With Higgins Or Obviate The Need For Beatie's Disqualification ...............................................................................................18

IV.     CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Aerojet-General Corp.,*
   86 Cal.App.4th 1324 (2001) ........................................................................ 10

*Adric v. State of California,*
   55 F.Supp.2d 1056 (C.D.Cal. 1999) ............................................................ 8

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
   96 Cal.App.4th 1017 (2002) ................................................................. 11, 17

*Anderson v. Eaton,*
   211 Cal. 113 (1930) .................................................................................. 18

*Atasi Corp. v. Seagate Technology,*
   847 F.2d 826 (Fed.Cir. 1988) .................................................................. 8

*Baxter Travenol Labs., Inc. v. Abbott Labs.,*
   1987 WL 12919, *1 (N.D.Ill. June 19, 1987) ......................................... 12

*California Canners and Growers v. Bank of America,*
   74 B.R. 336 (Bankr. N.D.Cal. 1987) ....................................................... 15

*City National Bank v. Adams,*
   96 Cal.App.4th 315 (2002) ....................................................................... 10

*Commercial Standard Title Co. v. Super. Ct.,*
   92 Cal.App.3d 934 (1979) ....................................................................... 19

*Flatt v. Super. Ct.,*
   9 Cal.4th 275 (1994) ................................................................................ 11

*Fund of Funds, Ltd. v. Arthur Andersen & Co.,*
   567 F.2d 225 (2d Cir. 1977) .................................................................... 15

*Goldstein v. Lees,*
   46 Cal.App.3d 614 (1975) ....................................................................... 18

*H.F. Ahmanson & Co. v. Solomon Bros., Inc.,*
   229 Cal.App.3d 1445 (1991) ......................................................... 10, 11, 17

*Hillerich & Bradsby Co. v. MacKay,*
   26 F.Supp.2d 124 (D.D.C. 1998) ............................................................ 12

*Huston v. Imperial Credit Comm. Mortgage Inv. Corp.,*
   179 F.Supp.2d 1157 (C.D.Cal. 2001) ...................................................... 8

*Image Tech. Services, Inc. v. Eastman Kodak Co.,*
   820 F.Supp. 1212 (N.D.Cal. 1993) .......................................................... 8

*In re Complex Asbestos Litig.,*
   232 Cal.App.3d 572 (1991) ................................................................. 16, 17

## TABLE OF AUTHORITIES (Cont'd)

Page(s)

*In re Regents of the University of California,*
   101 F.3d 1386 (Fed.Cir. 1996) ................................................................. 12

*In re Spalding Sports Worldwide, Inc.,*
   203 F.3d 800 (Fed.Cir. 2000) ............................................................ 12, 20

*Jessen v. Hartford Cas. Ins. Co.,*
   111 Cal.App.4th 698 (2003) ..................................................................... 13

*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.,*
   36 Cal.App.4th 1832 (1995) .................................................................. 9, 18

*People v. Speedee Oil Change Systems, Inc.,*
   20 Cal.4th 1135 (1999) .............................................................. 9, 16, 17, 18

*Rhone-Poulenc Rorer, Inc. v. Home Indemn.,*
      *Co.*
   32 F.3d 851 (3d Cir. 1994) ....................................................................... 20

*Shadow Traffic Network v. Super.Ct.,*
   24 Cal.App.4th 1067 (1994) ................................................................ 16, 17

*Telectronics Proprietary, Ltd. v. Medtronic Inc.,*
   836 F.2d 1332 (Fed.Cir.1988) .................................................................. 19

*Trone v. Smith,*
   621 F.2d 994 (9th Cir. 1980) ............................................................ 8, 10, 16

*Western Continental v. Natural Gas Corp.,*
   212 Cal.App.3d 752 (1989) ....................................................................... 19

*Wutchuma Water Co. v. Bailey,*
   216 Cal. 564 (1932) ................................................................................... 9

*Yorn v. Super. Ct.,*
   90 Cal.App.3d 669 (1979) ........................................................................... 9

*Zador Corp. v. C.K. Kwan,*
   31 Cal.App.4th 1285 (1995) .............................................................. 9, 10, 11

**Statutes**

California Business & Professions Code, §6068(e) ................................... 9

California Evidence Code §962 .......................................................... 18, 19, 20

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

Page(s)

**Rules**

California Rules of Professional Conduct:
Rule 1-120 .................................................................................................... 15
Rule 3-100(A) ................................................................................................. 9
Rule 3-310 ................................................................................... 9, 10, 11, 16
Rule 3-310(C) ................................................................................................ 10
Rule 3-310(E) ................................................................................................ 10
Rule 11-3(a)(2) ............................................................................................... 8
Rule 11-4 ........................................................................................................ 8
Rule 11-4(a)(1) ........................................................................................... 1, 8

**Other Authorities**

American Bar Assn. Code of Professional Responsibility EC4-4 ...................................... 18

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF PATRIOT SCIENTIFIC CORPORATION AND ITS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on February 4, 2005, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Jeremy Fogel of the United States District Court, Northern District of California, located at 280 First Street, San Jose, California, Defendants Charles H. Moore ("Moore") and Technology Properties, Ltd. ("TPL") (collectively, "Defendants") will, and hereby do, move for an order disqualifying plaintiff's counsel Beatie and Osborn LLP, John Lynch, Carlton M. Johnson, Jr., and Bramson, Plutzik, Mahler & Birkhaeuser in this matter.

This motion is made pursuant to Civil Local Rule 11-4(a)(1), this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Charles H. Moore and Robert A. McFarlane, such arguments as may be presented at the hearing, the pleadings and other papers on file with the Court, and all matters of which this Court may take judicial notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Beatie and Osborn LLP and John Lynch ("Patriot's New York Counsel"), Bramson, Plutzik, Mahler & Birkhaeuser ("Patriot's California Counsel") and Carlton M. Johnson, Jr. ("Patriot's Georgia Counsel") (collectively "Patriot's Counsel") should be disqualified from any further participation in this matter. Disqualification is required because Patriot's New York Counsel improperly retained Willis Higgins ("Higgins"), the attorney of record for Moore and his co-inventor Russell Fish ("Fish") during the prosecution of the patents-in-suit, to assist Patriot in its attempt to limit Moore's valuable ownership interest in these patents.

Higgins admitted under oath that, despite his previous attorney-client relationship with Moore and without Moore's consent, he and Patriot's New York Counsel have had more than a dozen *ex parte* meetings during which Higgins divulged his confidential and privileged communications with Moore and repeatedly discussed issues related to the prosecution and inventorship of the patents-in-suit -- the primary issue disputed in this matter. Higgins further admitted that he is obligated to assist Patriot's New York Counsel in its prosecution of this lawsuit and that he recently submitted an invoice for

1   more than $30,000 to Beatie and Osborn for work relating thereto.

2        The relationship between Patriot's New York Counsel and Higgins violates a catalogue of

3   ethical provisions governing attorney conduct before this Court, including (1) Higgins' continuing

4   fiduciary duties of confidentiality and loyalty to Moore, (2) Higgins' obligation to obtain Moore's

5   informed written consent prior to accepting employment directly adverse to Mr. Moore on a matter

6   stemming from their prior attorney-client relationship, and (3) in the case of Patriot's New York

7   Counsel, the proscription against assisting or inducing another attorney to breach the Rules of

8   Professional Conduct or the State Bar Act.

9        This improper relationship between Patriot's counsel and Moore's former attorney creates a

10   disqualifying conflict of interest for all of Patriot's attorneys. Patriot's New York Counsel must be

11   disqualified because (1) they have participated in Higgins' violations of the professional rules, and (2)

12   they have gained unfettered access to privileged and confidential information belonging to Moore as a

13   result of their misconduct. The knowledge that Patriot's New York counsel has improperly obtained

14   through its relationship with Higgins should also be imputed to Patriot's California and Georgia

15   Counsel, disqualifying them as well.

16   **II.     FACTUAL BACKGROUND**

17       **A.     Patriot Disputes That Moore and Fish Jointly Invented And Jointly Own The**
            **Patents-In-Suit.**

18

19        This litigation involves a dispute regarding the inventorship, and consequently the ownership,

20   of a family of seven patents (the "patents-in-suit"). Each of these patents are descendants of

21   application Serial Number 389,334 (the "'334 Application") filed on August 3, 1989, which was drawn

22   to a 32-bit Forth-based RISC microprocessor named the "Sh-Boom Microprocessor." *See* Patriot

23   Scientific Corporation's Third Amended Complaint for Declaratory Judgment ("Third Amended

24   Complaint"), at ¶2 and Exh. A, at p. 1.[1] In connection with the '334 Application, Moore and Fish filed

25   _____

26   [1]     Patriot's Amended Complaint, filed on July 5, 2004, lists seven patents: United States Patent
    Nos. 5,440,749 (the "'749 Patent"); 5,530,890 (the "'890 Patent"); 5,604,915 (the "'915 Patent");

27   5,659,703 (the "'703 Patent"); 5,784,584 (the "'584 Patent"); 5,809,336 (the "'336 Patent"); and
  6,598,148 (the "'148 Patent"). The Third Amended Complaint lists only the '336. However,

28   Continued on the next page

a "Declaration and Power of Attorney for Patent Application" appointing Higgins who was at that

time an attorney at the San Francisco law firm Flehr Hohbach Test Albritton & Herbert, as their

attorney and stating under oath that they were joint inventors.  McFarlane Decl., Exh. 1.  Based on this

statement of joint inventorship, all seven patents that issued from the '334 Application list Moore and

Fish as co-inventors.  *See* Patriot Scientific Corporation's Amended Complaint for Declaratory

Judgment ("Amended Complaint"), at ¶¶ 29, 30, 37, 43, 49, 53, and 59.

     In addition to swearing that he and Moore were joint inventors of the '334 Application, Fish

also recognized that he and Moore had equal ownership when he assigned his interest in the

application.  One of the recitals in the assignment executed by Fish and recorded in the USPTO

expressly stated that

> WHEREAS, each of Charles H. Moore and Russell H. Fish, III own an
> undivided one-half (1/2) interest in Patent Application Serial Number
> 07/389,334 and the Invention described and claimed in such application;
> . . .

*See* Plaintiff's Third Amended Complaint, ¶26; McFarlane Decl., Exh. 2, at p. 002833. Higgins was

aware of this provision, because he filed the assignment on behalf of Fish.  *Id.* at p. 002832.  Patriot

asserts that it received its right, title and interest in the patents-in-suit through two additional

assignments.  Patriot asserts that the Fish Family Trust assigned its interests to Nanotronics

Corporation, and that Nanotronics then assigned its rights to Patriot.  *See* Amended Complaint, at

¶¶ 32, 39, 45, 55.

     Notwithstanding Fish's representations to the USPTO that he and Moore co-invented and co-

owned the '334 Application and the grant of each resulting patent to Moore and Fish as co-inventors,

Patriot now asserts that the inventorship, and consequently the ownership, of the patents-in-suit is

incorrect.  Patriot asserts that Fish is the sole inventor (and consequently Patriot is the sole owner) of

---

Continued from the previous page

Defendants will shortly file an amended counterclaim seeking a judgment regarding ownership of the
six patents Patriot omitted from the Third Amended Compliant.  Thus, all seven patents remain at
issue.

the '336, '148, '749, and '890 Patents, that Moore and Fish are co-inventors of the '703 Patent, and that Moore is the sole inventor of the '915 and '584 Patents, and seeks a declaration "correcting" the inventorship and ownership accordingly.  *See* Amended Complaint, at pp. 13:28-14:16.

The reason for Patriot's effort to limit Moore's ownership rights is transparent.  Patriot is currently in litigation against Intel, Matsushita Electric Corporation of America, NEC Solutions (America), Inc., Sony Electronics Inc., and Toshiba America, Inc., seeking tens, if not hundreds, of millions of dollars in damages for infringement of the '336 Patent.  By asserting that Moore was not an inventor of, and consequently has no ownership interest in, the '336 patent, Patriot is attempting to exclude Moore from the patent's considerable value.

### B.   Higgins Was Moore's Attorney During Prosecution of the Patents-In-Suit.

Documents on file with the USPTO, Higgins' deposition testimony, and Moore's own belief demonstrate that Higgins equally represented Moore and Fish as co-inventors during the prosecution of the patents-in-suit.  First, the Declaration and Power of Attorney appointing Higgins as attorney of record was executed by both Moore and Fish.  *See* McFarlane Decl., Exh. 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Additionally, Higgins submitted a declaration in Patriot's Northern District of California litigation

24   against Intel in which he admits that <u>both</u> Fish and Moore were his clients.  McFarlane Decl., Exhibit

25   _____

26   [2] The referenced portions of the Higgins Deposition Transcript is submitted herewith as Exhibit 3 to
     the McFarlane Declaration.

27

28

5 at ¶7.

Like Higgins, Moore also reasonably believed that he was Higgins' client and that Higgins was his attorney during the prosecution of the patents-in-suit.  *See* Moore Decl., at ¶¶2-5.  Additionally, Moore has never been asked to or knowingly waived the attorney-client privilege protecting his communications with Higgins, released Higgins from the continuing duty to protect the confidentiality of their communications or any other duty Higgins owes him as a former client, or consented to Higgins taking any employment adverse to Moore's interests in the present litigation or any other matter. *See* Moore Decl., ¶¶6-11.

**C.    Patriot's New York Counsel Improperly Retained Higgins To Assist In This Litigation Against Higgins' Former Client Charles Moore.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.   **ARGUMENT**

   A.   **California Standards of Attorney Conduct Govern Counsel's Actions In This Matter.**

The Ninth Circuit has charged the district courts with the primary responsibility for policing conduct of the attorneys appearing before them. *Adric v. State of California,* 55 F.Supp.2d 1056, 1062 (C.D.Cal. 1999) (*citing Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980). *See also Atasi Corp. v. Seagate Technology,* 847 F.2d 826, 829 (Fed.Cir. 1988) (attorney disqualification is determined by the law of the regional circuit). Attorneys appearing before the Northern District of California must "comply with the standards of professional conduct required of members of the State Bar of California," as set forth in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto. *See* Civil L.R. 11-4(a)(1) and commentary thereto. *See also Image Tech. Services, Inc. v. Eastman Kodak Co.,* 820 F.Supp. 1212, 1215 (N.D.Cal. 1993). Indeed, Attorneys Beatie, Marshall and Lynch expressly agreed to abide by the Standards of Professional Conduct set forth in Civil Local Rule 11-4 when they executed under oath their *pro hac vice* applications. *See* McFarlane Decl., Exhs. 7, 8, and 9. *See also* Civil L.R. 11-3(a)(2)(requiring *pro hac vice* applicant to agree to abide by the standards of Rule 11-4).

Trial courts derive authority to disqualify an attorney from their inherent power to control in the furtherance of justice the conduct of all persons and ministerial officers appearing before them. *See Huston v. Imperial Credit Comm. Mortgage Inv. Corp.,* 179 F.Supp.2d 1157, 1166 (C.D.Cal. 2001). The decision to disqualify counsel rests within the discretion of the trial judge. *Image Tech. Services, Inc.,* 820 F.Supp. at 1215. As shown below, Patriot's Counsel has violated numerous ethical rules and must be disqualified.

   B.   **Attorneys' Fiduciary Obligations To Former Clients Forbid Subsequent Representation Of Adverse Parties In Related Matters And The Use Of Confidential Information To Former Client's Detriment.**

"The relation between attorney and client is a fiduciary relation of the very highest character

1   and binds the attorney to most conscientious fidelity." *Zador Corp. v. C.K. Kwan*, 31 Cal.App.4th

2   1285 (1995). *See also Yorn v. Super. Ct.*, 90 Cal.App.3d 669, 675 (1979) ("Few precepts are more

3   firmly entrenched than that the fiduciary relationship between attorney and client is of the very highest

4   character." (citations omitted)).  Among the obligations this fiduciary relationship imposes upon the

5   attorney are the duty to protect client confidences and the duty of loyalty.  *See, e.g., Zador Corp.*, 31

6   Cal.App.4th at 1293.  Indeed, the attorney's duties of confidentiality and of loyalty are "fundamental"

7   to our legal system, *People v. Speedee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146, (1999), and

8   California courts expressly forbid the attorney, even after an attorney-client relationship has been

9   terminated, from (1) acting so as to injure the former client in matters involving the former

10  representation, or (2) using any information acquired during the representation against the former

11  client. [3]  *Yorn v. Super. Ct.*, 90 Cal.App.3d at 675. (citing *Wutchuma Water Co. v. Bailey*, 216 Cal. 564

12  (1932)).  *See also Zador Corp.*, 31 Cal.App.4th at 1293 ("Because of the fiduciary relationship, it is

13  improper for an attorney to assume a position which is inconsistent with the interest of a former

14  client.").

15      The duties of confidentiality and loyalty are codified in the California State Bar Act and the

16  California Rules of Professional Conduct.  One of the basic obligations imposed by statute upon

17  attorneys in California is to "maintain inviolate the confidences, and at every peril to himself or herself

18  to preserve the secrets, of his or her clients," Cal. Bus. & Prof. Code, §6068(e), and an attorney "shall

19  not reveal [such information] without the informed written consent of the client. . .."  California Rules

20  of Professional Conduct, Rule 3-100(A).  The twin duties of confidentiality and loyalty are also

---

22  [3] The duties of loyalty and confidentiality are related to, but broader than, the attorney-client privilege.
23  The attorney-client privilege applies in judicial proceedings "in which the attorney may be called as a
    witness or be otherwise compelled to produce evidence concerning a client.  A member's ethical duty
24  of confidentiality is not so limited in its scope of protection for the client-lawyer relationship of trust
    prevents a member from revealing the client's confidential information even when not confronted with
25  such compulsion.  Thus, a member may not reveal such information except with the consent of the
    client or as authorized or required by the State Bar Act, these rules, or other law."  California Rules of
26  Professional Conduct, Rule 3-310 (discussion) (West 2004).  Moreover, as discussed in section III.D.,
    below, "waiver of the attorney-client privilege does not affect the duty of loyalty for conflict of
27  interest purposes." *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal.App.4th 1832, 1846
    (1995).

28

1  reflected in rules limiting the concurrent representation of clients with conflicting interests and the

2  representation of clients whose interests conflict with those of an attorney's former client.  *See, e.g.,*

3  *City National Bank v. Adams,* 96 Cal.App.4th 315, 329 (2002).  These conflict of interest rules

4  proscribe attorneys from representing clients with potentially conflicting interests in the same matter

5  without their informed written consent:

6                      An attorney shall not, without the informed written consent of each
client: (1) accept representation of more than one client in a matter in
7                      which the interests of the clients potentially conflict.

8  California Rules of Professional Conduct, Rule 3-310(C).  An attorney's ability to undertake

9  employment adverse to present or former clients is similarly limited by client's consent:

10                      A member shall not, without the informed written consent of the client
of former client, accept employment adverse to the client or former
11                      client where, by reason of the representation of the client or former
client, the member has obtained confidential information material to the
12                      employment.

13  California Rules of Professional Conduct, Rule 3-310(E).

14         It is "beyond dispute [that] a court may disqualify an attorney from representing a client with

15  interests adverse to those of a former client."  *H.F. Ahmanson & Co. v. Solomon Bros., Inc.*, 229

16  Cal.App.3d 1445, 1451(1991).  Indeed, where a conflict is found to exist under Rule 3-310, and the

17  former client has not consented to the current adverse representation, "disqualification follows as a

18  matter of course.  The court does not engage in a 'balancing of the equities' between the former and

19  current clients.  The rights of the former client will prevail."  *Id.* at 1451.

20         It is also well settled that the former client need <u>not</u> prove that the attorney is actually in

21  possession of confidential information pertaining to the previous employment to justify

22  disqualification.  *See, e.g., Adams v. Aerojet-General Corp.,* 86 Cal.App.4th 1324, 1331 (2001).

23  Rather, the former client need only show that that the matters embraced within the pending suit

24  wherein the conflict is alleged are "substantially related" to the matters or cause of action wherein the

25  attorney previously represented him.  *Zador,* 31 Cal.App.4th at 1293.  *See also Trone v. Smith,* 621

26  F.2d 994, 998 (9th Cir. 1980).  Out of deference to the attorney's "absolute duty of fidelity," the court

27  will not inquire into the nature and extent of the communications between the former client and the

28  attorney, but "will assume that during the course of the former representation [that] confidences were

1  disclosed to the attorney bearing on the subject matter of the representation." *Zador,* 31 Cal.App.4th

2  at 1293.

3          Under this "substantial relation" test, "if the nature of the relationship is such that confidences

4  *could have* been exchanged between the lawyer and the clients, courts will conclusively presume that

5  they were exchanged, and disqualification will be required." *American Airlines, Inc. v. Sheppard,*

6  *Mullin, Richter & Hampton*, 96 Cal.App.4th 1017, 1038 (2002).  Moreover, where the former and

7  current employment are on opposite sides of the very same matter or where the current matter involves

8  the work that the lawyer performed for the former client, disqualification will be ordered.  *Id.  See also*

9  *Flatt v. Super. Ct.,* 9 Cal.4th 275, 283 (1994) ("Where the requisite substantial relationship between

10  the subjects of the prior and current representations can be demonstrated, access to confidential

11  information by the attorney in the course of the first representation (relevant by definition to the

12  second relationship) is presumed and disqualification of the attorney's representation of the second

13  client is mandatory; indeed, the disqualification extends vicariously to the entire firm."); *H.F.*

14  *Ahmanson & Co. v. Solomon Bros., Inc.*, 229 Cal.App.3d at 1453 ("the conclusive presumption also

15  avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry

16  into the actual state of the lawyer's knowledge and makes it clear that the legal profession's intent to

17  preserve the public's trust over its own self interest." (citation omitted)).

18          The California Court of Appeal concluded in *Zador Corp. v. Kwan,* that the substantial relation

19  test "adds nothing to the disqualification analysis" where the present litigation involves former joint

20  clients who subsequently have become adverse because a substantial relation between the former

21  representation and the subsequent action is *inherent*."  31 Cal.App.4th at 1294 (emphasis in original).[4]

22  Consequently, *Zador* held, the propriety of disqualification in joint representation cases turns on the

23  scope of the client's consent under Rule 3-310, rather than on the existence of the substantial

24  _____

25  [4] The court illustrated its point through the following hypothetical:  Clients A and B are jointly
    represented by [attorney] C until C discovers a conflict between the legal position of A and B.  Client
26  B retains separate counsel.  Client A then sues client B.  In these circumstances, a substantial
    relationship will always exist between C's prior representation of B and the litigation between A and
27  B.  *Id.*

28

1   relationship.  *See id.* at 1295, 1300 (holding that the attorney in question should not be disqualified

2   from representing a party adverse to attorney's former client because the former client had provided

3   informed written consent waiving the conflict).

4   **C.   Higgins Represented Both Moore and Fish During Prosecution of the Patents-In-**
        **Suit.**
5

6          Higgins and Moore's belief that an attorney-client relationship existed between them is

7   confirmed by controlling case law.  The Federal Circuit recently laid to rest any lingering doubt that

8   an attorney-client relationship arises, and the attorney-client privilege applies, during patent

9   prosecution before the USPTO.  *See In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805

10  (Fed.Cir. 2000) (holding as a matter of substantive patent law subject to Federal Circuit jurisdiction,

11  that the invention record is protected by the attorney-client privilege).  The existence of the attorney-

12  client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and

13  his manifested intention to seek professional advice."  *In re Regents of the University of California,*

14  101 F.3d 1386, 1390 (Fed.Cir. 1996).

15         Where the attorney jointly represents two clients during prosecution of a patent application, the

16  attorney-client relationship attaches to both clients.  A community of legal interest may arise between

17  two parties who are jointly developing a patent because they have a common legal interest in

18  obtaining the greatest degree of patent protection and in exploiting their invention.  *See In re Regents*

19  *of the University of California,* 101 F.3d at 1389 (citing *Baxter Travenol Labs., Inc. v. Abbott Labs.,*

20  1987 WL 12919, *1 (N.D.Ill. June 19, 1987)).  In such instances, the patent attorney establishes a joint

21  attorney-client relationship with both clients.  *See Hillerich & Bradsby Co. v. MacKay,* 26 F.Supp.2d

22  124, 126 (D.D.C. 1998).  *Cf In re Regents of the University of California,* 101 F.3d at 1389 ("When

23  the same attorney represents the interests of two or more entities on the same matter, those represented

24  are viewed as joint clients for the purposes of privilege.")

25         Here, Moore and Fish jointly owned and jointly invented the subject matter of their patent

26  applications, and had a common legal interest in obtaining the greatest degree of patent protection and

27  in exploiting their invention.  Consequently, Higgins established a joint attorney-client relationship

28  with Moore and Fish.

**D.     The Relationship Between Patriot's New York Counsel And Higgins Breached Higgins' Fiduciary Duties of Confidentiality and Loyalty to Moore, Violated The Applicable Rules Of Professional Conduct, And Created Disqualifying Conflicts of Interest.**

Higgins admitted he represented Moore during prosecution of the patents-in-suit.  The existence of that attorney-client relationship is confirmed by Moore's belief that Higgins was his attorney and by case law establishing the joint attorney-client relationship in multi-inventor patent applications.  Higgins admits that he has been retained by Patriot's New York Counsel to assist in this matter.  He also admits he divulged his attorney-client communications with Moore to Patriot's New York Counsel and provided them with analysis concerning inventorship of the patents-in-suit -- the critical issue in this litigation.

The relationship between Higgins and Patriot's New York counsel has created disqualifying conflicts of interest.  First, this dispute is "substantially related" to Higgins' prior attorney-client relationship with Moore.  Patriot is alleging that Moore's status as co-inventor is incorrect, and that Moore has limited ownership interests in the patents-in-suit.  Higgins submitted documents to the USPTO on behalf of his joint clients Moore and Fish representing that the two men were co-inventors of the patents-in-suit (*see, e.g.,* McFarlane Decl. Exh. 1) and, when Fish assigned his rights in the patent application, that Moore and Fish were co-owners of the patents (*see, e.g.,* McFarlane Decl. Exh. 2).  Thus, the issues Patriot is disputing in this lawsuit -- inventorship and ownership of the patents-in-suit-- go to the heart of Higgins' previous representation of Moore.  This dispute is, consequently, substantially related to Higgins' prior attorney-client relationship with Moore.  *See Jessen v. Hartford Cas. Ins. Co.,* 111 Cal.App.4th 698, 712 (2003)(The "subject matter" to be evaluated includes any information material to "evaluation, prosecution, settlement or accomplishment of the litigation or transaction," and a "substantial relationship" exists whenever the subject matter of the prior and current representations are linked in some rational manner).  Because this matter is substantially related to Higgins' previous work for Moore, it is conclusively presumed that Higgins had access to Moore's confidential information, and disqualification of Higgins would follow as a matter of course.

Second, Higgins retention by Patriot's New York Counsel violates rules prohibiting Higgins from accepting adverse employment without Moore's informed written consent to Higgins' conflict of

interest.  Moore never provided informed written consent to the original *potential* conflict of interest

that arose due to Higgins' joint representation of Moore and Fish.  Further, Moore was never asked for

and never provided informed written consent for his former attorney to assist Patriot's counsel in its

attempt to strip Moore of his ownership interest in the patents Higgins prosecuted on his behalf.  In the

absence of Moore's informed written consent, Higgins alliance with Patriot in this matter creates

disqualifying conflicts of interest.

> **E.    Patriots' New York Counsel Must Be Disqualified Because Of Its Improper Relationship With Higgins And Because It Gained Access To Moore's Attorney-Client Confidences By Virtue Of The Relationship.[5]**

Patriot's New York Counsel's relationship with Higgins requires disqualification for two

independent reasons.  First, Patriot's New York counsel should be disqualified because its retention of

---

[5] Patriot's New York Counsel's retention of Higgins demonstrates an utter disregard for this Court's rules and the standards for professional conduct that govern attorneys' behavior in this forum.  Patriot's lead counsel, Russell Beatie, has also demonstrated similar unbecoming contempt for this Court's ability to decide the matters presently at issue.  Following Mr. Cook's assertion during the Higgins deposition that Higgins' conversations with Moore were privileged and that Higgins had continuing duties to Moore, the following exchange took place:

> Mr. Cook:       And I certainly agree we need the judge rather than you deciding whether or not --
>
> Mr. Beatie:     I'm much smarter than he is.
>
> Mr. Cook:       -- sure he'll be glad to hear that.
>
> Mr. Beatie:     But [sic] all means.  And in any event it may also mean that I can get it right and he can't.  In my over 40 years of experience I have, over many years, lost my faith in the judiciary.
>
> Mr. Cook:       Well, I'm sure that's what appellate courts are for.
>
> Mr. Beatie: You don't think I think they're any better than the guys who sit at the bottom, do you?  I don't.
>
> Mr. Cook:       I believe that .
>
> Mr. Beatie:     It's true.  You should.
>
> Mr. Saunders: He believes that you believe it.

Higgins Depo., at p. 103:9-22.

1   Higgins violates of the rule that an attorney "shall not knowingly assist in, solicit, or induce any

2   violation of the [Rules of Professional Conduct], or the State Bar Act."  California Rule of

3   Professional Conduct, Rule 1-120.  Violation of this rule constitutes an independent ground for

4   disqualification.  *California Canners and Growers v. Bank of America,* 74 B.R. 336, 342 (Bankr.

5   N.D.Cal. 1987)(holding law firm that participated "substantially and knowingly" in second law firm's

6   violation of duty of loyalty to second firm's client "must be disqualified").  *See also Fund of Funds,*

7   *Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 233 (2d Cir. 1977).

8        In *Fund of Funds,* the case relied upon in *California Canners and Growers,*

9        Morgan, Lewis and Bockius (Morgan) agreed to represent Fund of
         Funds (FOF) in a federal securities action against numerous defendants.
10       Arthur Andersen & Co. was a possible additional defendant, because it
         had certified FOF's financial statements. Morgan, as regional counsel for
11       Arthur Andersen, tried to avoid "making a case" against Arthur
         Andersen. In the course of its investigation of defendants, however,
12       Morgan collected documents relevant to Arthur Andersen's liability.
         When FOF decided to sue Arthur Andersen, Morgan referred the matter
13       to Milgrim, Thomajan & Jacobs (Milgrim), a firm with which Morgan
         had a close relationship. Morgan briefly consulted with Milgrim
14       regarding the drafting of the complaint against Andersen.

15       The trial court found that Morgan would have been disqualified from
         bringing an action against Arthur Andersen, because it was a current
16       client of Morgan.  The trial court refused to disqualify Milgrim,
         however, finding that it was highly unlikely that Morgan passed to
17       Milgrim confidential information regarding Arthur Andersen.

18       The Second Circuit reversed. Although there was no evidence that
         Milgrim received confidential information regarding Arthur Andersen,
19       the court held that Milgrim must be disqualified because it aided
         Morgan in violating its duty of loyalty to Arthur Andersen.

20

21   *See California Canners,* 74 B.R. at 347.

22        Here, there is no doubt that Patriot's New York Counsel "assisted in, solicited and induced"

23   Higgins' violation of his ethical duties to Moore.  Ignoring the attorney-client relationship between

24   Higgins and Moore, Patriot's New York Counsel retained Higgins to complete work adverse to his

25   former client, received an invoice for more than $30,000 for such work, and held more than a dozen

26   meetings with Higgins during which attorney-client communications between Moore and Higgins

27   were divulged.  Patriot's substantial relationship with Higgins violates Rule 1-120, and requires that

28   Patriot's New York Counsel be disqualified.

1    Second, Patriot's New York Counsel must be disqualified because it gained improper access to

2    Moore's confidential and privileged communications with Higgins.  As set forth above, Higgins

3    admitted that he divulged to Patriot's New York Counsel his attorney-client communications with

4    Moore and provided them with analysis based on his previous representation regarding the critical

5    issue of inventorship.  California's conflict of interest and disqualification rules are intended to prevent

6    law firms from using confidential information obtained from a former client against that client in a

7    subsequent dispute.  *See, e.g., Trone v. Smith,* 621 F.2d 998-1001 (9th Cir. 1980);  *People ex. rel Dept.*

8    *of Corporations v. Speedee Oil Change Systems, Inc.* 20 Cal.4th 1135, 1146 (1999) (noting that Rule

9    3-310 is intended to protect client confidences) . Consequently, the rules are applied to disqualify

10   counsel who have received *or potentially* received an opponent's confidential information through a

11   relationship prohibited by the Rules of Professional Conduct.  *See, e.g., People ex. rel Dept. of*

12   *Corporations v. Speedee Oil Change Systems, Inc.* 20 Cal.4th at 1156 (holding California's general

13   rule that disqualifying conflict with a single attorney, even if attorney only has "of counsel" status, is

14   generally imputed to entire law firm because of the potential for exchanges of information within the

15   firm); *In re Complex Asbestos Litig.,* 232 Cal.App.3d 572, 593 (1991) (Law firm that hired paralegal

16   formerly employed by opponent, and who had knowledge pertaining to on-going dispute, was

17   properly disqualified because it could not demonstrate ethical "Chinese Wall" sufficient to rebut

18   presumption that confidential information had been shared.  "A law firm that hires a non-lawyer who

19   possesses an adversary's confidential information creates a situation similar to hiring an adversary's

20   attorney, which suggests tat confidential information is at risk).  *See also Shadow Traffic Network v.*

21   *Super.Ct.,* 24 Cal.App.4th 1067 (1994) (Disqualification ordered where defendant's law firm hired an

22   expert witness who had been interviewed, although not retained,  by plaintiff's counsel in the same

23   matter and where defendant's attorney had divulged confidential information to expert.  The court

24   *presumed* that the plaintiff's attorneys had imparted confidential information to the expert and that the

25   expert imparted it to defendant's counsel).

26          Here, it cannot be disputed that Patriot's New York Counsel has obtained improper access to

27   Moore's client confidences because Higgins has <u>admittedly</u> divulged them.  Such exploitation of

28   former client confidences, and their use directly adverse to the interests of the former client, are

1   simply not tolerated under this Court's ethical rules, and Patriot's New York Counsel should be

2   disqualified.

3       **F.      Patriot's California and Georgia Counsel Should Also Be Disqualified.**

4           As set forth above, the California Rules of Professional Conduct require disqualification of

5   attorneys and law firms who have been in a position in which they *potentially* have access to their

6   adversary's attorney-client confidences.  Disqualification is appropriate where such information *could*

7   have been transferred, and a party seeking disqualification does not require proof that information was

8   *actually* transferred.  *See H.F. Ahmanson & Co. v. Solomon Bros., Inc.,* 229 Cal.App.3d at 1452 ("It is

9   well settled [that] actual possession of confidential information need not be proved in order to

10  disqualify the former attorney.").  *See also People ex. rel Dept. of Corporations v. Speedee Oil*

11  *Change Systems, Inc.* 20 Cal.4th at 1156; *American Airlines, Inc. v. Sheppard, Mullin, Richter &*

12  *Hampton*, 96 Cal.App.4th at 1038; *Shadow Traffic Network v. Super.Ct.,* 24 Cal.App.4th at 1067; *In*

13  *re Complex Asbestos Litig.,* 232 Cal.App.3d at 593.  In this case, Patriot's California and Georgia

14  Counsel should be disqualified because they have had the opportunity to obtain Moore's confidential

15  information through their association with Patriot's New York Counsel.

16          Patriot's California Counsel has appeared in person before this Court and has electronically co-

17  signed documents served and filed in this action.  Their involvement since the inception of the case

18  has unquestionably provided Patriot's New York counsel the opportunity to pass on the information

19  improperly provided by Higgins. Thus, they should be disqualified.

20          Patriot's Georgia Counsel -- Carlton M. Johnson, Jr. -- has served on the Board of Directors of

21  Patriot and, presumably, has been apprised by Patriot's New York Counsel regarding this matter and

22  the information obtained through discovery and investigation.  Thus, even though Patriot's Georgia

23  Counsel first entered a Notice of Appearance in December 2004, Patriot's New York Counsel has had

24  the opportunity to disclose the improperly obtained client confidences by virtue of its long-time

25  association with Patriot.  Thus, disqualification is appropriate for Patriot's Georgia Counsel as well.[6]

26  _____

27  [6]     Based on the available evidence,  Defendants do not assert that Patriot's California or Georgia
        Counsel have engaged in the New York Counsel's ethical breaches.  However, disqualification

28  Continued on the next page

**G.      The Present Dispute Between Patriot and Moore Does Not Waive Moore's Privilege With Higgins Or Obviate The Need For Beatie's Disqualification**

California Evidence Code §962 provides that:

> Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

Patriot's counsel has asserted that California Evidence Code § 962 serves to justify their conduct. Patriot is wrong for at least three independent reasons.

First, § 962 has no impact on this motion to disqualify because the motion is based on Higgins' violation of fiduciary duties of confidentiality and loyalty owed to his former client Charles Moore and the failure to obtain Moore's informed written consent to Higgins' adverse employment in this matter. Such duties are broader than the attorney-client privilege, and waiver of the privilege does not operate as a waiver of these duties. *Metro-Goldwyn Mayer, Inc. v. Tracinda Corp.*, 36 Cal.App.4th 1832, 1846 (1995) (waiver of the attorney-client privilege does not affect the duty of loyalty for conflict of interest purposes); *Goldstein v. Lees*, 46 Cal.App.3d 614, 621 n.5 (1975) ("The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client." (citing American Bar Assn. Code of Professional Responsibility EC4-4*)).  The client and only the client may release the attorney from these fiduciary obligations. *See Commercial*

---

Continued from the previous page

depends on their opportunity to obtain access to confidential information, rather than on any accusation of wrong doing on their part. *See, e.g., People ex. rel Dept. of Corporations v. Speedee Oil Change Systems, Inc.* 20 Cal.4th at 1147 (citing *Anderson v. Eaton,* 211 Cal. 113, 116 (1930) (When examining conflicts of interest, "the attorney's actual intention and motives are immaterial, . . . 'the rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct,' but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights.") Thus, disqualification is appropriate even without any intentional misconduct.

1 | *Standard Title Co. v. Super. Ct.*, 92 Cal.App.3d 934, 944 (1979).

2 |     The California Court of Appeal squarely held that section 962 is irrelevant to the issue of

3 | attorney disqualification in *Western Continental v. Natural Gas Corp.*, 212 Cal.App.3d 752 (1989).

4 | The law firm in question, Bright & Brown, jointly represented Western Continental ("Western") and

5 | National Gas Corporation ("NGC") in a dispute with a third party pertaining to natural gas rights on a

6 | specific parcel of land in Brentwood, California.  After that dispute settled, Brown & Bright filed a

7 | complaint against NGC on behalf of Western involving a second dispute pertaining to the same

8 | property.  *Id.* at 102-103.  The court held disqualification was appropriate because the second matter

9 | was "substantially related" to the previous matter on which Brown & Bright had jointly represented

10 | the parties.  Moreover, the Court rejected Western's argument that section 962 prevented

11 | disqualification:

12 | 
13 |     In the first instance, we are not concerned in this case with discovery of allegedly privileged communications.  Instead, the pertinent issue is the propriety of an attorney's representation adverse to a former client.  Our courts have distinguished the rule against representing conflicting interests from the attorney-client evidentiary privilege noting that the former is broader than the latter.  The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possible pertinent information to their attorneys, and both protect only the confidential information disclosed.  The duty not to represent conflicting interests … is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense.  Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them.  The privilege is bottomed only on the first of these attributes, the conflicting interests rule, on both.

20 | *Id.* at 761-62(citations and quotations omitted).  Thus, since section 962 did nothing to excuse the

21 | attorney's breach of his fiduciary obligations to his former client, and it did not prevent

22 | disqualification.  *See id.*

23 |     <u>Second</u>, § 962 does not apply in this case.  Patriot is not a "successor-in-interest" for the

24 | purposes of Moore's attorney-client privilege with Higgins because "the assignment of a patent does

25 | not transfer the attorney-client relationship."  *Telectronics Proprietary, Ltd. v. Medtronic Inc.*. 836

26 | F.2d 1332, 1336 (Fed.Cir.1988).  Patriot asserts that it obtained rights to the patents-in-suit through a

27 | series of three separate transactions.  Russell Fish transferred his rights to the Fish Family Trust,

28 | which subsequently transferred its rights to an entity called Nanotronics, which then transferred its

1  rights to Patriot.  Patriot, thrice removed from Russell Fish and his attorney-client relationship with

2  Higgins is not a "successor-in-interest" under the holding of *Telectronics* for purposes of applying the

3  privilege.

4

5

6       <u>Third</u>, holding that § 962 serves to waive the attorney-client privilege created during

7  prosecution of the patents-in-suit would violate the principles set forth by the Federal Circuit in its

8  landmark decision *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed.Cir. 2000).  The Federal

9  Circuit unambiguously held that application of the attorney-client privilege to the invention record is

10  "unique to patent law because the invention record relates to an invention submitted for consideration

11  for possible patent protection."  *Id.* 203 F.3d at 803-04.  Thus, the privilege is to be subject to a

12  uniform national standard governed by substantive Federal Circuit law.  *Id.*  Application of the

13  California's state law provision in § 962 would undermine the Federal Circuit's clearly stated intent

14  that the privilege should be applied to the patent prosecution record using a uniform national standard.

15  *Cf. Rhone-Poulenc Rorer, Inc. v. Home Indemn., Co.* 32 F.3d 851, 863 (3d Cir. 1994)("An uncertain

16  privilege -- or one which purports to be certain, but rests in widely varying applications by the courts -

17  - is little better than no privilege.")

18  **IV.   CONCLUSION**

19       When Mr. Higgins prosecuted the seven patents-in-suit, he developed an attorney-client

20  relationship with two men: Russell Fish and Charles Moore.  In return for tens of thousands of dollars

21  in attorney's fees from Patriot's New York counsel, Higgins has abandoned the fiduciary duties that he

22  still owes to his former client Charles Moore, and has freely provided services to support Patriot's

23  claim that Moore should be excluded from the bounty of his inventive effort.  The rules of

24  professional conduct simply do not allow Higgins to betray his former client in order to reap a sizable

25  financial award from those who claim rights through Russell Fish.  Nor do those rules allow Patriot's

26  New York counsel to entice Higgins to breach his ethical duties or to benefit from the confidential

27  information received by virtue of their forbidden relationship.

28       Higgins' retention to assist Patriot's Counsel in this lawsuit and their extensive contact with

1   Mr. Higgins violate the fundamental ethical rules protecting Mr. Moore's interests as Higgins' former

2   client and the ethical duties that Patriot's New York Counsel undertook when they sought admission to

3   this Court *pro hac vice*.   The authorities governing attorney conduct in this forum require that the

4   Patriot's New York Counsel be disqualified, and that their disqualifying conflict be imputed to

5   Patriot's California and Georgia Counsel, disqualifying them as well.

6   DATED:  December 20, 2004          Respectfully submitted,

7                                      TOWNSEND and TOWNSEND and CREW LLP

8

9                                      By:   /s/ Roger L. Cook

10                                        *Attorneys for Defendants*
                                          *Technology Properties Ltd. and Daniel E. Leckrone*

11

12                                     HENNEMAN & SAUNDERS

13                                     By:   /s/ F. Eric Saunders

14                                        *Attorneys for Defendant Charles E. Moore*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**GENERAL ORDER 45 ATTESTATION**

2        I, Roger L. Cook, am the ECF user whose ID and password are being used to file this

3   "Defendants Charles H. Moore and Technology Properties, Ltd.'s Notice of Motion and Motion for

4   Disqualification of Plaintiff's Counsel; Points And Authorities In Support Thereof."  In compliance

5   with General Order 45, X.B., I hereby attest that F. Eric Saunders has concurred in this filing.

6                                                    /s/ Roger L. Cook

7

8   60358119 v1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28