1   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
     Alan R. Plutzik, Esq. (State Bar No. 077785)
2   Daniel E. Birkhaeuser, Esq. (State Bar No. 136646)
     Jennifer S. Rosenberg, Esq. (State Bar No. 121023)
3   L. Timothy Fisher, Esq. (State Bar No. 191626)
     2125 Oak Grove Road, Suite 120
4   Walnut Creek, California 94598
     Telephone:  (925) 945-0200
5   Facsimile:  (925) 945-8792

6   BEATIE AND OSBORN LLP
     Russel H. Beatie, Esq. (Admitted pro hac vice)
7   Curt D. Marshall, Esq. (Admitted pro hac vice)
     521 Fifth Avenue, Suite 3400
8   New York, New York  10175
     Telephone:  (212) 888-9000
9   Facsimile:  (212) 888-9664

10   Of Counsel:  John E. Lynch (Admitted pro hac vice)

11   Attorneys for Plaintiff

12

13             UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA

14

    -----------------------------------X   Civil Action No.
15                          :   C 04 0618 (JF) (HRL)
    PATRIOT SCIENTIFIC CORPORATION,      :
16                          :   **PLAINTIFF'S MOTION**
            Plaintiff,          :   **TO PERMIT HIGGINS'**
17                          :   **TESTIMONY**
      v.                    :
18                            :
    CHARLES H. MOORE, TECHNOLOGY        :   Date: February 4, 2005
19   PROPERTIES LIMITED, and DANIEL E.  :   Time: 9:00 a.m.
    LECKRONE,                    :   Courtroom: 2
20                            :   Before:  The Honorable
            Defendants.        :            Jeremy N. Fogel
21   -----------------------------------X

22

23

24

25

26

27

28

# Table of Contents

TABLE OF AUTHORITIES..........................................ii

NOTICE OF MOTION AND MOTION....................................2

STATEMENT OF THE
ISSUE.........................................................3

ANSWER........................................................3

STATEMENT OF FACTS............................................4

ARGUMENT

     Higgins Should Be Permitted to Testify
     About the Joint Representation
     (the Patent Applications and Related Matters)..............8

           A.   Under the Federal Common Law of Privilege
               This Court Should Apply the
               California Rule Governing Joint Clients
               in Litigation...................................10

           B.   The Policies Underlying the Federal Patent
               Laws Also Support the Application of
               the Joint Client Exception to the Privilege.....14

CONCLUSION...................................................18

-i-

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Allendale Mutual Insurance Co. v. Bull Data System Inc.,
 152 F.R.D. 132 (N.D. Ill. 1993) . . . . . . . . . .  16

Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,
 73 F.3d 1573 (Fed. Cir. 1996) . . . . . . . . . . .  14

Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002)  16

Clarke v. American Commerce National Bank, 974 F.2d 127
 (9th Cir. 1992) . . . . . . . . . . . . . . . . . .  9

Computer Network Corp. v. Spohler, 95 F.R.D. 500 (D.C.D.C.
 1982) . . . . . . . . . . . . . . . . . . . . . . .  17

Decaview Distribution Co., Inc. v. Decaview Asia Corp.,
 2000 WL 1175583 (N.D. Cal. 2000) . . . . . . . . .  11

E.I. DuPont de Nemours & Co. v. Okuley, 344 F.3d 578 (6th
 Cir. 2003) . . . . . . . . . . . . . . . . . . . .  14

Fina Oil and Chemical Co. v. Ewen, 123 F.3d 1466 (Fed. Cir.
 1997) . . . . . . . . . . . . . . . . . . . . . . .  14

Gemstar-TV Guide Int'l Inc. v. International Trade Comm'n,
 2004 WL 2059279 (Fed Cir. Sept. 16, 2004). . . . . . . . . . . .  15

In re Grand Jury Proceedings (John Doe), 727 F.2d 1352
 (4th Cir. 1984) . . . . . . . . . . . . . . . . . .  15

In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001)  16

In re Grand Jury Subpoena, 341 F.3d 331 (4th Cir. 2003)  16

Hillerich & Bradsby Co. v. MacKay, 26 F.Supp.2d 124
 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . .  12

Iowa State University Research Foundation, Inc. v. Sperry
 Rand Corp., 444 F.2d 406 (4th Cir. 1971) . . . . .  15

Jamesbury Corp. v. United States, 518 F.2d 1384 (Ct. Cl.
 1975) . . . . . . . . . . . . . . . . . . . . . . .  15

McLaughin v. Lunde Truck Sales, 714 F.Supp. 916 (N.D. Ill.
 1989) . . . . . . . . . . . . . . . . . . . . . . .  18

McMorgan & Co. v. First California Mortgage Co., 931 F.Supp.
 699 (N.D. Cal. 1996) . . . . . . . . . . . . . . .  9

Midwest Industrial, Inc. v. Karavan, 175 F.3d 1356 (Fed.
 Cir. 1999) . . . . . . . . . . . . . . . . . . . .  9

Miller v. Alagna, 138 F.Supp.2d 1252 (C.D. Cal. 2000) .  11

NLRB v. Harvey, 349 F.2d 900 (4th Cir. 1965) . . . . . .  15

*Pennsylvania Casualty Co. v. Elkins*, 70 F.Supp. 155 (D.C. Ky. 1947) . . . . . . . . . . . . . . . . . . . . . . 11

*Pennu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998) . 14

*Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314 (7th Cir. 1963) . . . . . . . . . . . . . . . . 16

*In re Regents of the University of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . 12

*Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003) . . . . . . . . . . . . 14

*Rival Manufacturing Co. v. Dazey Products Co.*, 358 F.Supp. 91 (W.D. Mo. 1973) . . . . . . . . . . . . . . . . . 15

*Roberts v. Heim*, 123 F.R.D. 614 (N.D. Cal. 1988) . . . 13

*SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D. Conn. 1976) 12

*Shreckhire v. Ritchie*, 160 F.2d 593 (4th Cir. 1947) . . 15

*Sky Valley Limited Partnership v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648 (N.D. Cal. 1993) . . . . . . . . . . 13

*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . 9

*United States v. Doe*, 469 U.S. 1188 (1985) . . . . . . 15

*United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982) . 15

*United States v. Nixon*, 418 U.S. 683 (1974) . . . . . . 16

*United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. White*, 950 F.2d 426 (7th Cir. 1991) . 16

*United States v. Zolin*, 491 U.S. 554 (1989) . . . . . . 9

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) . . . 15


**STATE CASES**

*Benson v. Custer*, 236 Iowa 345 (1945) . . . . . . . . . 11

*Bush v. Bush*, 142 Okla. 152 (1930) . . . . . . . . . . 12

*Cousins v. State Farm Mutual Automobile Insurance Co.*, 258 So.2d 629 (La. App. 1972) . . . . . . . . . . . 11

*Cummings v. Sherman*, 16 Wash. 2d 88 (1943) . . . . . . 12

*Dumas v. State Farm Mutual Automobile Insurance Co.*, 111 N.H. 43 (1971) . . . . . . . . . . . . . . . . . . . 11

-iii-

*Evans v. Evans*, 8 Utah 2d 26 (1958) . . . . . . . . . 12

*Glacier General Assurance Co. v. Superior Court*, 95 Cal.App.3d 836 (2d Dist. 1979) . . . . . . . . . . 13

*Horowitz v. Le Lacheure*, 80 R.I. 235 (1953) . . . . . 12

*Hough v. Reserve Gold Min. Co.*, 55 Nev. 375 (1934) . . 11

*Jenkins v. Jenkins*, 151 Neb. 113 (1949) . . . . . . . 11

*L. Dean Petty v. The Superior Court of Los Angeles Co.*, 116 Cal.App.2d 20 (Cal. Dist. Ct. App. 1953) . . . . 13

*Liberty Mutual Insurance Co. v. Engels*, 41 Misc.2d 49 (Sup. Ct. Kings Cty. 1963) . . . . . . . . . . . 12

*Longo v. American Policyholders' Insurance Co.*, 181 N.J.Super. 87 (N.J. Super. Ct., Essex Cty. 1981) . . 11

*Loutzenhiser v. Doddo*, 436 Pa. 512 (1970) . . . . . . 12

*McCain v. Phoenix Resources, Inc.*, 85 Cal.App.3d 575 (1st Dist. 1986) . . . . . . . . . . . . . . . . . 13

*Minard v. Stillman*, 31 Or. 164 (1897) . . . . . . . . 12

*Netzley v. Nationwide Mutual Insurance Co.*, 34 Ohio App.2d 65, (1971) . . . . . . . . . . . . . . . . . . . 12

*Nichols v. Elkins*, 2 Ariz.App. 272 (1965) . . . . . . 11

*Wortham & Van Liew v. Superior Court*, 188 Cal.App.3d 927 (4th Dist. 1987) . . . . . . . . . . . . . . . . 13

*Zader Corp., N.V. v. C.K. Kawan*, 31 Cal.App.4th 1285 (Cal. App. 1995) . . . . . . . . . . . . . . . . . . 11

**FEDERAL STATUTES**

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . 15

35 U.S.C. § 256 . . . . . . . . . . . . . . . . . . . 15

Fed. R. Evid. 501 . . . . . . . . . . . . . . . . . . 9

**STATE STATUTES**

Cal. Evid. Code § 962 . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS**

U.S. Patent No. 5,809,336 . . . . . . . . . . . . passim

**Notice of Motion and Motion**

TO:   DEFENDANTS CHARLES H. MOORE, TECHNOLOGY PROPERTIES LTD.,

      AND DANIEL E. LECKRONE

      PLEASE TAKE NOTICE THAT, on February 4, 2005 at 9:00 a.m. or
as soon after that as counsel may be heard at 280 First Street, San
Jose, California, plaintiff Patriot Scientific Corporation will
move for an Order before United States District Judge Jeremy N.
Fogel of the United States District Court, Northern District of
California, permitting non-party Willis E. Higgins, Esq., to
testify about preparing and filing the patent application at issue
in this case and related matters without objections based on the
attorney-client privilege.

      Plaintiff makes this motion pursuant to the permission of the
Court granted orally on December 17, 2004; this Memorandum of
Points and Authorities; the Affidavit of Russel H. Beatie; the
pleadings and other papers on file with the Court; all matters of
which the Court may take judicial notice; and arguments that may be
presented at the hearing.

2

1

**STATEMENT OF THE ISSUE**

2    May one former joint client or his successor in interest
3 assert the attorney-client privilege against another former joint
4 client or his successor in interest when the clients or their
5 successors in interest are adverse to each other in a litigation
6 involving matters of common interest in the joint representation?

7

8

**ANSWER**

9    No.   When one former joint client litigates against
10 another over a matter of common interest from the former joint
11 representation, no attorney-client privilege exists between them.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        3

1           **MEMORANDUM OF POINTS AND AUTHORITIES**

2                **STATEMENT OF FACTS**

3         This is a civil action by plaintiff Patriot Scientific

4 Corporation ("Patriot") for declaratory judgment on inventorship

5 and ownership of U.S. Patent No. 5,809,336, "High Performance

6 Microprocessor Having Variable Speed System Clock" ("'336

7 Patent")[1]. (Affidavit of Russel H. Beatie ("Beatie Aff.") ¶ 4.)

8 The variable speed clock is a high speed device indispensable to

9 all high speed microprocessors. (Beatie Aff ¶ 7.)   It has no

10 substitute and no competition. (<u>Id.</u>)

11         In early August 1989, Russell H. Fish, III, conceived the

12 "Fish Clock," as the ring oscillator variable high speed system

13 clock came to be known; prepared a drawing on his CAD machine;

14 wrote the patent specifications; and next morning, hand delivered

15 them to Willis E. Higgins, Esq., his patent attorney. (<u>Id.</u> ¶ 8.)

16 Having solely conceived the '336 invention, Fish was, by law, its

17 sole owner. (<u>Id.</u> ¶ 9.)

18         Fish developed the invention as part of a much larger

19 joint project with defendant Charles H. Moore. (<u>Id.</u> ¶ 10.)   The

20 larger project involved a microprocessor known colloquially as the

21 Sh-Boom project or Sh-Boom technology. (<u>Id.</u> ¶ 11.)   Higgins had

22

---

23     [1]  By common parlance among those most familiar with this
device, it was known as the "Fish Clock;" but it had, according

24 to the claims in the patent, more than one form.  The patent
covers a ring oscillator variable high speed system clock, an

25 entire ring oscillator, and an entire variable speed clock.  High
speed operation of any microprocessor (more than 110 megahertz)

26 requires one of these devices on the microprocessor substrate.
(Beatie Aff. ¶¶ 5,6.)  For convenience we refer to the '336

27 Patent or the Fish Clock.

28                            4

represented both named inventors jointly on all patent matters. (Id. ¶ 12.) The Sh-Boom project patent application and the '336 Patent application, part of the joint representation, are the central issues in this case. (Id. ¶ 13.)

In the interests of speed, economy, and protection and for tactical reasons, Higgins filed the many devices of the Sh-Boom technology in a single patent application without resolving issues of inventorship. (Id. ¶ 14.) Months before he filed the original patent application Higgins notified both his clients that the initial patent filing for the Sh-Boom technology would contain many separate inventions and that the PTO would most likely divide the application into the separate inventions. (Id. ¶ 15, Ex. 1.) Several later letters and conversations confirmed this advice and the co-inventors knowledge of the unresolved inventorship issues. (Id. ¶ 16, Ex. 2.) The original application, filed on August 3, 1989, properly listed Moore and Fish as co-inventors of the Sh-Boom technology, including the separate inventions. (Id. ¶ 17.) It did not undertake to specify inventorship for any of the many separate, individual devices in it. At the end of August, 1992, three years later, the Patent and Trademark Office ("PTO") issued a division order designating ten inventions and requiring individual patent applications with inventorship correctly stated for each. (Id. ¶ 18.) The division order included the ring oscillator variable high speed system clock (the '336 Patent or Fish Clock) as one of them. (Id. ¶ 19.) Higgins wrote to Moore and Fish to request precise information on inventorship for all ten inventions. (Id. ¶ 20, Ex.

5

1  3.)   The next day, Fish sent a detailed point-by-point memorandum

2  stating inventorship for each of the ten devices specified in the

3  PTO division order. (Id. ¶ 21, Ex. 4.)   Setting the stage for the

4  problems to follow, perhaps intentionally or with the advice of

5  defendant Daniel E. Leckrone, Moore never responded.[2] (Id. ¶ 22.)

6  Without confirmation of Fish's list from Moore, in fact, lacking

7  any response at all, Higgins did not feel that he could properly

8  attribute inventorship of any device to any individual when he

9  prepared the division order patent applications for filing. (Id. ¶

10 24.)   Instead, he relied on long-standing policies and rules of the

11 PTO that allowed him to file the division order applications under

12 the original joint application signed by both men. (Id. ¶ 25.)

13 This meant that, at least for the moment, the patents were properly

14 but inaccurately recorded in the PTO under co-inventorship. (Id. ¶

15 26.)

16        Patriot is the named assignee of the '336 Patent and is

17 listed on the patent and in the records of the PTO as the sole

18 assignee of the patent. (Id. ¶ 29.)   Defendant Moore, perhaps

19 inadvertently, and certainly before the factual purge by defendant

20 Leckrone, correctly listed Patriot in an earlier version of his

21 web-site as the sole owner of the Sh-Boom technology, including the

22 '336 Patent. (Id. ¶ 30, Ex. 5.)   According to a memorandum

23

24 _____

25    [2]  In an earlier telephone conversation between Moore and
   Higgins, Moore told Higgins that Fish conceived the Fish Clock
26 (the '336 Patent) and several other valuable devices.  Moore now
   denies this; and to preserve his right to license patents
27 in which he has no valid ownership interest, he wants Higgins
   precluded from testifying about this conversation. (Id. ¶ 23.)

28                              6

1   apparently prepared by Moore, he ("Computer Cowboys" is his d.b.a.
2   name) attributed inventorship of the ring oscillator variable high
3   speed clock to Fish. (Id., Ex. 8, p. 2.)   Now, Moore claims co-
4   inventorship of the patent; and defendants Moore, Technology
5   Properties Limited ("TPL") and Daniel Leckrone claim partial co-
6   ownership of the patent.  (Id. ¶ 32.)

7            On December 1, 2004, Higgins, as former patent counsel
8   for the two named inventors of the '336 Patent, testified in a
9   deposition noticed by plaintiff Patriot. (Id. ¶ 27.)   Under the
10  applicable law one joint client and its successor in interest
11  cannot assert the attorney-client privilege against another joint
12  client and its successor in interest when they are adverse
13  litigants in a dispute over a matter of common interest from their
14  joint representation.   During Higgins' deposition, counsel for
15  defendants repeatedly asserted the attorney-client privilege,
16  disrupted the deposition, and made the videotape unuseable for
17  trial. (Id. ¶ 28.)   Patriot seeks a ruling that no privilege
18  applies to the testimony of Higgins in this case and that
19  objections on this basis may not be made.

20           To compromise the infringement actions brought by
21  Patriot, defendants have approached the infringers and sold at
22  least one of them a license to use the '336 Patent for a nuisance
23  amount. (Id. ¶ 33.)  Because defendant Moore is a named co-inventor
24  of the '336 Patent, the federal patent laws allow him to license
25  the invention without Patriot's consent and in spite of this
26  lawsuit to correct inventorship. (Id. ¶ 34.) Infringers purchase
27
28                                    7

1  licenses at nuisance value levels to insulate themselves, even if
2  only temporarily, from potential infringement damages until the
3  inventorship issue is resolved. (Id. ¶ 35.)  Defendants are, in
4  essence, destroying the value of the '336 Patent and depriving
5  Patriot and its shareholders of the rightful value of the '336
6  Patent. (Id. ¶ 36.)  The current posture of the patent portfolio
7  improperly benefits Moore and Leckrone while it denies Patriot and
8  its shareholders their proper economic returns. (Id. ¶ 37.)
9  Defendants in this case have no payroll, have no shareholders, find
10 low royalty rates rewarding, and are selling licenses at "nuisance"
11 royalty rates because they need comparatively little income to be
12 largely rewarded. (Id. ¶ 38.)  Hence, the current co-inventorship
13 status suits the licensing program of defendants Leckrone, a man
14 justifiably afraid of litigation, and Moore, a social recluse not
15 pleased at the prospect of telling the necessary story in
16 litigation. (Id. ¶ 39.)  As a result discovery led defendants to
17 bizarre testimony to preserve their position (the full
18 demonstration of that must await cross-examination before the
19 Court). (Id. ¶ 40.)

20

21                          **ARGUMENT**

22

                   **Higgins Should Be Permitted to Testify**
23                     **About the Joint Representation**
                 **(the Patent Applications and Related Matters)**
24
25     Rule 501 of the Federal Rules of Evidence states in part
26       ... the privilege of a witness, person,
          government, State or political subdivision
27        thereof shall be governed by the principles of

28                              8

the common law as they may be interpreted by
the courts of the United States in the light
of reason and experience ... [Fed. R. Evid.
501.]

Patriot seeks declaratory judgment on the inventorship and
ownership of a patent under the federal patent laws, a federal
question claim. Accordingly, federal common law governs the
application of the attorney-client privilege in this case. See
United States v. Zolin, 491 U.S. 554, 562 (1989); Clarke v.
American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992);
Fed. R. Evid. 501. When no federal common law exists, the
situation here, a federal court should follow the law of the
federal circuit in which it sits. See McMorgan & Co. v. First
California Mortgage Co., 931 F. Supp. 699 (N.D. Cal. 1996). In
this court the law is clear: in litigation between former jointly
represented clients involving matters of common interest in the
former representation, no privilege exists, and neither former
client may assert a privilege against the other. Id.; Cal. Evid.
Code § 962.

Another rule may govern in cases under the federal patent
laws. A federal patent common law of privilege may prevail on
questions that bear "an essential relationship" to the patent laws
or that "clearly implicate" the patent laws. In re Spalding Sports
Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000); Midwest
Indus., Inc. v. Karavan, 175 F.3d 1356, 1359 (Fed. Cir. 1999).

The parties agree that Higgins jointly represented Fish
and Moore. When counsel for Moore's successors in interest,
defendants Leckrone and TPL, asserted the attorney-client privilege

9

1   during Higgins' deposition, he defined the relationship as follows:

2           MR. COOK: ... Mr. Moore and Mr. Fish were
            clients of Mr. Higgins. As a result they had
3           a joint -- there was a joint privilege that
            permitted them to share information --
4           confidential information -- back and forth
            without being -- without there being a waiver
5           and to hold discussions with Mr. Higgins, as
            well as in his presence, without there being a
6           waiver of the privilege. Now, you can
            characterize that any way you want. I call
7           that a joint privilege ... [Beatie Aff., Ex.
            7, p. 98.]

8   The named inventors of the '336 Patent, Fish and Moore, were thus

9   clearly joint clients of Higgins. Fish's successor in interest,

10  Patriot, has brought this litigation against Moore and his

11  successors in interest, Leckrone and TPL. Furthermore, this

12  action, a suit for declaratory judgment correcting inventorship and

13  ownership of the '336 Patent, clearly involves matters of common

14  interest from a joint representation. Regardless of whether the

15  federal common law of privilege or the federal patent common law of

16  privilege applies, the result should be the same: the attorney-

17  client privilege should not bar Higgins' testimony.

18  **A.      Under the Federal Common Law of Privilege**
19  **        This Court Should Apply the**
    **        California Rule Governing Joint Clients in Litigation**

20          This Court has previously considered whether a joint

21  attorney-client privilege exists between former jointly represented

22  clients now in litigation. The Court determined that no clear

23  federal common law existed and that it should look to California

24  law for guidance. See <u>McMorgan & Co. v. First California Mortgage</u>

25  <u>Co.</u>, 931 F. Supp. 699, 701 (N.D. Cal. 1996).

26          Under California law, when two or more clients have

27

28                                    10

1   retained or consulted a lawyer upon a matter of common interest,

2   neither client (nor their successors in interest) may assert the

3   attorney-client privilege in an action by one against the other

4   involving matters of common interest in the joint representation.

5   Cal. Evid. Code § 962; <u>Zader Corp., N.V. v. C.K. Kawan</u>, 31 Cal.

6   App. 4th 1285, 1294 (Cal. App. 1995); <u>Decaview Distribution Co.,</u>

7   <u>Inc. v. Decaview Asia Corp.</u>, 2000 WL 1175583 (N.D. Cal.

8   2000)(applying California law); <u>Miller v. Alagna</u>, 138 F. Supp. 2d

9   1252, 1256 (C.D. Cal. 2000)(applying California law).  Section 962

10  of the California Evidence Code states:

11          Where two or more clients have retained or
            consulted a lawyer upon a matter of common
12          interest, none of them, nor the successor in
            interest of any of them, may claim a privilege
13          under this article as to a communication made
            in the course of that relationship when such
14          communication is offered in a civil proceeding
            between one of such clients (or his successor
15          in interest) and another of such clients (or
            his successor in interest).
16
17  This exception to the privilege is the majority rule.  <u>See, e.g.,</u>

18  <u>Nichols v. Elkins</u>, 2 Ariz. App. 272, 277, 408 P.2d 34, 39 (1965);

19  218 Ill. App. 295 (Ill. App. 1st Dist. 1920); <u>Benson v. Custer</u>, 236

20  Iowa 345, 351, 17 N.W.2d 889, 892 (1945); <u>Pennsylvania Casualty Co.</u>

21  <u>v. Elkins</u>, 70 F. Supp. 155, 157 (D.C. Ky. 1947)(applying Kentucky

22  law); <u>Cousins v. State Farm Mut. Auto. Ins. Co.</u>, 258 So. 2d 629,

23  635-36 (La. App. 1972); <u>Jenkins v. Jenkins</u>, 151 Neb. 113, 125, 36

24  N.W.2d 637, 643 (1949); <u>Hough v. Reserve Gold Min. Co.</u>, 55 Nev.

25  375, 35 P.2d 742 (1934); <u>Dumas v. State Farm Mut. Auto. Ins. Co.</u>,

26  111 N.H. 43, 49, 274 A.2d 781, 784 (1971); <u>Longo v. American</u>

27  <u>Policyholders' Ins. Co.</u>, 181 N.J. Super. 87, 436 A.2d 577, 580

28                                    11

1   (N.J. Super. Ct., Essex Cty. 1981); <u>Liberty Mut. Ins. Co. v.</u>

2   <u>Engels</u>, 41 Misc. 2d 49, 51, 244 N.Y.S.2d 983, 986 (Sup. Ct. Kings

3   Cty. 1963), <u>aff'd</u>, 21 App. Div. 2d 808, 250 N.Y.S.2d 851 (2d Dep't

4   1963); <u>Netzley v. Nationwide Mut. Ins. Co.</u>, 34 Ohio App. 2d 65, 296

5   N.E.2d 550, 561 (1971); <u>Bush v. Bush</u>, 142 Okla. 152, 286 P. 322

6   (1930); <u>Minard v. Stillman</u>, 31 Or. 164, 49 P. 976 (1897);

7   <u>Loutzenhiser v. Doddo</u>, 436 Pa. 512, 518-19, 260 A.2d 745, 748

8   (1970); <u>Horowitz v. Le Lacheure</u>, 80 R.I. 235, 241, 101 A.2d 483,

9   487 (1953); <u>Evans v. Evans</u>, 8 Utah 2d 26, 27, 327 P.2d 260, 261-62

10  (1958); <u>Cummings v. Sherman</u>, 16 Wash. 2d 88, 95, 132 P.2d 998,

11  1002-03 (1943); <u>see also</u>, Restatement (Third) of The Law Governing

12  Lawyers: The Privilege of Co-Clients § 75 (2000).

13          Parties jointly developing a patent with an attorney have

14  a "common legal interest" in obtaining the greatest protection and

15  in exploiting the patents. <u>In re Regents of the Univ. of Cal.</u>, 101

16  F.3d 1386, 1389 (Fed. Cir. 1996); <u>Hillerich & Bradsby Co. v.</u>

17  <u>MacKay</u>, 26 F. Supp. 2d 124, 126 (D.D.C. 1998). The "community of

18  interest" establishes a joint attorney-client relationship between

19  or among them. <u>Id.</u>; <u>SCM Corp. v. Xerox Corp.</u>, 70 F.R.D. 508, 514

20  (D. Conn. 1976).

21          The underlying rationale for, and the purpose of, the

22  rule support its application here. The principal purpose of the

23  joint client privilege is to encourage the fullest possible

24  communications between joint clients -- and between them and their

25  joint lawyer -- on matters related to their joint representation.

26  The principal purposes of the joint-clients-in-litigation exception

27

28                          12

1   to the attorney-client privilege are (1) to prevent unjustifiable

2   inequality in access to information necessary to a fair resolution

3   of disputes that arise between parties who were in the past joint

4   clients if the disputes relate to matters involved in the joint

5   representation and (2) to discourage abuses of fiduciary

6   obligations and to encourage parties to honor any legal duties they

7   had to share information related to common interests. Sky Valley

8   Limited Partnership v. ATX Sky Valley, Ltd., 150 F.R.D. 648, 653

9   (N.D. Cal. 1993); see also Glacier General Assurance Co. v.

10  Superior Court, 95 Cal. App. 3d 836 (2d Dist. 1979); Wortham & Van

11  Liew v. Superior Court, 188 Cal. App. 3d 927 (4th Dist. 1987);

12  McCain v. Phoenix Resources, Inc., 85 Cal. App. 3d 575 (1st Dist.

13  1986); Roberts v. Heim, 123 F.R.D. 614 (N.D. Cal. 1988).   The

14  California Court of Appeal has also stated, "The reason assigned

15  for [Section 962] is that as between the clients, communications

16  made for the mutual benefit of all lack the element of

17  confidentiality which is the basis of privileged communications."

18  L. Dean Petty v. The Superior Court of Los Angeles Co., 116 Cal.

19  App. 2d 20, 29 (Cal. Dist. Ct. App. 1953).

20          Last, reliance on the principles of § 962 would

21  "accommodate the legitimate expectations of the state's citizens."

22  To the extent that any of them expected to be governed by any

23  principles of law, every person involved, party or not, would have

24  expected California law to govern. Under California law governing

25  the attorney-client privilege, defendants cannot use the privilege

26  to prevent Higgins from testifying about preparing and prosecuting

27

28                                  13

1  the '336 Patent application.

2  **B.      The Policies Underlying the Federal Patent
          Laws Also Support the Application of**
3          **the Joint Client Exception to the Privilege**

4          If the Court believes the joint client privilege in this

5  case must be construed under substantive patent law, the proper

6  result remains the same:  the joint-clients-in-litigation exception

7  to the attorney-client privilege should govern.  Policies expressed

8  in the federal patent laws support the conclusion that the Court

9  should have Higgins' testimony when it decides inventorship of the

10 '336 Patent.

11         Patriot   sues   for   declaratory   judgment   to   correct

12 inventorship.  This is a common claim under the patent laws and one

13 created expressly by the patent statute, 35 U.S.C. § 256; <u>E.I.</u>

14 <u>DuPont de Nemours & Co. v. Okuley</u>, 344 F.3d 578 (6th Cir. 2003);

15 <u>Regents of University of New Mexico v. Knight</u>, 321 F.3d 1111 (Fed.

16 Cir. 2003).  Hence, Congress considers correct inventorship and

17 correction of inventorship important.  The patent laws seek to have

18 patents  upheld  ...  even  if  that  means  construing  them  very

19 narrowly. <u>See</u> 35 U.S.C. § 112; <u>Athletic Alternatives, Inc. v.</u>

20 <u>Prince Manufacturing, Inc.</u>, 73 F.3d 1573, 1581 (Fed. Cir. 1996).

21         If a patent lists as an "inventor" one who is not the

22 actual inventor, the patent may become invalid or unenforceable.

23 <u>See</u> <u>Fina Oil and  Chemical Co. v. Ewen</u>, 123 F.3d 1466, 1471 (Fed.

24 Cir. 1997); <u>Pennu v. Iolab Corp.</u>, 155 F.3d 1344, 1349 (Fed. Cir.

25 1998); <u>Gemstar-TV Guide Int'l Inc. v. International Trade Comm'n</u>,

26 2004 WL 2059279, at * 25 (Fed Cir. Sept. 16, 2004)(Beatie Aff., Ex.

27

28                                  14

6); <u>Iowa State Univ. Research Foundation, Inc. v. Sperry Rand Corp.</u>, 444 F.2d 406, 408 (4th Cir. 1971); <u>Shreckhire v. Ritchie</u>, 160 F.2d 593, 595 (4th Cir. 1947); <u>Jamesbury Corp. v. United States</u>, 518 F.2d 1384, 1395 (Ct. Cl. 1975); <u>Rival Mfg. Co. v. Dazey Prods. Co.</u>, 358 F. Supp. 91 (W.D. Mo. 1973); <u>see also</u> 35 U.S.C. § 256. Invalidation or unenforceability would defeat the purpose of the patent laws to uphold patents.

The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). The privilege nonetheless frustrates the general duty to disclose and therefore impedes investigation of the truth. <u>See</u>, <u>NLRB v. Harvey</u>, 349 F.2d 900, 907 (4th Cir. 1965). Accordingly, the privilege must be strictly construed. <u>See</u>, <u>In re Grand Jury Proceedings (John Doe)</u>, 727 F.2d 1352, 1356 (4th Cir. 1984); <u>United States v. Jones</u>, 696 F.2d 1069 (4th Cir. 1982); <u>United States v. (Under Seal)</u>, 748 F.2d 871 (4th Cir. 1984), <u>cert. granted sub. nom.</u>, <u>United States v. Doe</u>, 469 U.S. 1188, 105 S. Ct. 954, 83 L. Ed. 2d 962 (1985), <u>appeal after remand</u>, 757 F.2d 600, <u>vacated on other grounds</u>, ___ U.S.___, 105 S. Ct. 1861, 85 L. Ed. 2d 155, <u>on remand</u>, 763 F.2d 662 (4th Cir. 1985). Here, use of the privilege to deny the Court valuable first hand evidence on the question of inventorship would frustrate the clear statutory and case-law policy of the patent laws to have inventorship stated correctly. To avoid an incorrect result in an inventorship dispute between former joint clients, the privilege

1   rules should be strictly construed or, pursuant to Section 962, not
2   applied at all.  See United States v. White, 950 F.2d 426, 430 (7th
3   Cir. 1991); Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d
4   314, 319, 323 (7th Cir. 1963); Allendale Mut. Ins. Co. v. Bull Data
5   Sys. Inc., 152 F.R.D. 132, 135 (N.D. Ill. 1993);  Cavallaro v.
6   United States, 284 F.3d 236, 245-46 (1st Cir. 2002); In re Grand
7   Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001); White, 950 F.2d
8   at 430 (the scope of the privilege is narrow, because it is in
9   'derogation of the search for truth'); Radiant Burners, 320 F.2d at
10  319, 323; Allendale, 152 F.R.D. at 135.  The application of the
11  attorney-client privilege removes otherwise pertinent information
12  from the fact-finder, thereby impeding the full and free discovery
13  of the truth. In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th
14  Cir. 2003).  United States v. Nixon, 418 U.S. 683, 710 (1974)
15  ("exceptions to the demand for every man's evidence are not lightly
16  created nor expansively construed, for they are in derogation of
17  the search for truth").  Without prompt correction of inventorship,
18  third parties may infringe the patent with impunity; may risk
19  invalidation or unenforceability of the patent; and will delay
20  Patriot, Fish's successor in interest, a proper remedy to protect
21  its interest.
22          On the equities in this dispute, the Court should keep
23  three factors in mind:
24              (a)   defendants created the problem (Moore failed to
25                    supply information on inventorship in spite of
26                    Higgins' request)(Beatie Aff. ¶¶ 14-17, 20-25);
27
28                                      16

        (b)     defendants' current position, resulting from the problem they created, is a false one (they are licensing the portfolio, including the '336 patent, at firesale prices but under proper inventorship would have no right or power to license at all) (<u>Id.</u> ¶¶ 32-38);

        (c)     defendants' wish to use the privilege to preserve their false position . . . and advantage, i.e., they wish to use the privilege to compromise Patriot's efforts to correct inventorship.

Higgins can provide evidence that Fish is the sole inventor of the '336 Patent.  Defendants assert the privilege to frustrate Patriot's ability to correct inventorship of the '336 Patent.  By their application of the privilege, defendants would deny the Court the best first-hand, independent corroborative evidence about inventor ship.  The Court should not allow manipulation of the joint attorney-client privilege to achieve an unwarranted advantage over the party opposing the privilege.  <u>McLaughin v. Lunde Truck Sales</u>, 714 F. Supp. 916, 918 (N.D. Ill. 1989); <u>Computer Network Corp. v. Spohler</u>, 95 F.R.D. 500 (D.C.D.C. 1982).

1

**CONCLUSION**

2          For the reasons set forth in this memorandum, Patriot

3   respectfully requests that the Court enter an Order permitting

4   third-party Willis E. Higgins, Esq. to testify about preparing and

5   filing the patent application at issue in this case and related

6   matters without objections based on the attorney-client privilege.

7

8

Dated:  December 20, 2004          BRAMSON, PLUTZIK, MAHLER &
9                                     BIRKHAEUSER, LLP
                                    Alan R. Plutzik, Esq.
10                                    (State Bar No. 077785)
                                    Daniel E. Birkhaeuser, Esq.
11                                    (State Bar No. 136646)
                                    Jennifer S. Rosenberg, Esq.
12                                    (State Bar No. 121023)
                                    L. Timothy Fisher, Esq.
13                                   (State Bar No. 191626)
                                    2125 Oak Grove Road, Suite 120
14                                   Walnut Creek, California  94598
                                    Telephone:  (925) 945-0200
15                                   Facsimile:  (925) 945-8792

16

17

18

19

20

21

22

23

24

25

26

27

28                                         18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEATIE AND OSBORN LLP


By:_____\s_____
        Russel H. Beatie
        (Admitted <u>pro hac vice</u>)
        Curt D. Marshall
        (Admitted <u>pro hac vice</u>)
521 Fifth Avenue, Suite 3400
New York, New York  10175
Telephone:  (212) 888-9000
Facsimile:  (212) 888-9664

Of Counsel:  John E. Lynch
(Admitted <u>pro hac vice</u>)

Attorneys for Plaintiff